Steven T. WALTNER and Sarah V. Waltner, Plaintiffs,

v.

UNITED STATES, Defendant.

No. 10–225T.

United States Court of Federal Claims.

April 22, 2011.

738

Steven T. Waltner and Sarah V. Waltner, Avondale, AZ, pro se.

David R. House, Trial Attorney, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Steven I. Frahm, Chief, Court of Federal Claims Section, United States Department of Justice and John A. DiCicco, Acting Assistant Attorney General, Tax Division.

## OPINION

HORN, J.

### FINDINGS OF FACT

The plaintiffs, Steven T. Waltner and Sarah V. Waltner, filed a *pro se* complaint in this court, together with an application to proceed *in forma pauperis*. On May 7, 2010, the court granted the plaintiffs' application to proceed *in forma pauperis* based on the sworn affidavits of both plaintiffs. *See Waltner v. United States*, 93 Fed.Cl. 139 (2010).[1] In their complaint, the plaintiffs allege that they are owed a refund from the Internal Revenue Service (IRS) for each of the taxable years from 2003 through 2008. The plaintiffs also allege that they are entitled to statutory damages for violation by the IRS of an Arizona recording statute, Arizona Revised Statutes (A.R.S.) § 33–420 (2010). Plaintiffs claim the IRS violated A.R.S. § 33–

---

**1.** Plaintiffs stated that filing by paper "placed a financial burden upon the Plaintiffs," and requested that in the "interests of fairness, expediency and financial prudence, and in light of our *in forma pauperis* status, we humbly ask this Court to make an exception in this case and grant Plaintiffs' motion to allow us to submit future filings electronically." Based on plain-tiffs' representations, including by Sarah V. Waltner that she is a paralegal, the court granted the request. Subsequently, plaintiff Sarah V. Waltner completed the prerequisites to use the court's electronic filing system. Other than overly long, repetitive filings, these *pro se* plaintiffs have used the electronic filing system properly.

420, by recording a tax lien against plaintiff Sarah V. Waltner on December 30, 2009 in Maricopa County, Arizona.

*Tax Year 2003*

On or before April 15, 2004, the plaintiffs filed their federal income tax return Form 1040 for the taxable year ending December 31, 2003, reporting taxable income of $96,100.00, a reported tax due of $13,841.00, and reported an overpayment of $10,040.00, which was refunded on April 5, 2004. On an amended tax return, Form 1040X, for 2003, filed on February 1, 2008, plaintiffs reported an adjusted gross income in the amount of $14,485.00 and an overpayment of $18,356.00. Plaintiffs claim the amount of income includes "Unemployment Compensation, a Federal instrumentality; no other 'income' or 3401(a) or 3121(a) 'wages' received." Plaintiffs indicate that the return they filed on "February 1, 2008 for the year 2003 contains no mathematical errors, and the figures for adjusted gross income, standard deduction and exemptions calculate to no taxable income and $0 in tax, which calculations are substantially correct." (internal citations omitted).

Plaintiffs also included a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request with their 2003 amended income tax return. Plaintiffs claimed that the amount of ordinary dividends listed as $1,444.33 on Schedule K-1 by the Sarah V. Waltner Trust was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K-1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Ordinary dividends' should be zero (–0–)." Additionally, plaintiffs claimed the amount of qualified dividends, listed as $1,739.05 on Schedule K-1 by the Sarah V. Waltner Trust, was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K-1 should have been filed/issued. Amount of beneficiary's [Sarah

V. Waltner] 'Qualified dividends' should be zero (–0–)." Plaintiffs similarly claimed that the amount of net long-term capital gain listed as $68,872.88 on Schedule K-1 by the Sarah V. Waltner Trust was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K-1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Net long term capital gain' should be zero (–0–)." Finally, plaintiffs claimed the amount of net long-term capital gain (post May 5, 2003) listed as $6,673,67 on Schedule K-1 by the Sarah V. Waltner Trust was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or Business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K-1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Net long term capital gain' should be zero (–0–)."

Plaintiffs additionally filed a Form 4852, Substitute for Form W-2, reporting Steven T. Waltner's wages as zero and asserting that the original Form W-2 was incorrect and that the payer, New Century Mortgage Corp., "erroneously alleged payments of IRC Section 3401(a) [definition of wages] and 3121(a) [definition of wages for employment] 'wages' " which plaintiffs disputed, stating Mr. Waltner "received no such 'wages.' " In the entry on the Substitute for Form W-2 which asked to "[e]xplain your efforts to obtain Form W-2, Form 1099-R, or Form W-2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a)."

Finally, plaintiffs included a Form 1099-DIV with the amended return, listing the amount of dividends received as zero and stated:

This correcting Form 1099-DIV is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Citigroup Global Mar-

kets Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of DIVIDENDS reportable under IRC 6042 [26 U.S.C. § 6042 (2006)]. The 1099–DIV should not have been issued as NO such payments were received. Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs seek $18,356.00, plus interest, for the federal income tax withheld by the IRS for their refund claim for the 2003 tax year.

*Tax Year 2004*

On or before April 25, 2005, the plaintiffs filed their federal income tax return Form 1040 for the taxable year ending December 31, 2004, reporting taxable income of $48,631.00, a reported tax due of $2,751.00 and an overpayment of $4,119.00, which was refunded on May 30, 2005. The Form 1040 reported $4,184.00 in capital gains and business income of $3,569.00. Included with plaintiffs' return was a Form W–2 which reported income from Steven T. Waltner's wages in the amount of $70,694.26 and income tax withholding in the amount of $6,970.29.

Subsequently, on or before February 12, 2008, the plaintiffs filed an amended income tax return, Form 1040X, for the 2004 taxable year, reporting adjusted gross income in the amount of $370.00 and an overpayment of $8,334.00. Plaintiffs indicate the return "filed by Plaintiffs on or about February 12, 2008 for the year 2004 contains no mathematical errors, and the figures for adjusted gross income, standard deduction and exemptions calculate to $370 taxable income and $0 in tax, which calculations are substantially correct." (internal citations omitted). The adjusted gross income of $370.00 corresponded to unemployment compensation received by plaintiff Sarah V. Waltner.

With their amended return for the 2004 tax year, plaintiffs filed a Form 4852, Substitute for Form W–2, reporting Steven T. Waltner's wages as zero and asserting that the original Form W–2 was incorrect and payer, New Century Mortgage Corp., "erroneously alleged payments of IRC section 3401(a) and 3121(a) 'wages'" which plaintiffs disputed, stating Mr. Waltner "received no such 'wages.'" In the entry on the Substitute for Form W–2 which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated, as he had on the Substitute for Form W–2 for the 2003 tax year, "[n]one, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a)."

As with the 2003 tax year, the plaintiffs included a Form 1099–DIV with the amended return, listing the amount of dividends received as zero. The 2004 version stated:

This correcting Form 1099–DIV is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Citigroup Global Markets Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of DIVIDENDS reportable under IRC 6042 [26 U.S.C. § 6042]. The 1099–DIV should not have been issued as NO such payments were received. Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs also included a number of Forms 1099–INT with the amended return. In the first Form 1099–INT, the plaintiffs listed the amount of interest income as zero and stated:

This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Keypoint Credit Union] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

For the second Form 1099–INT, the plaintiffs likewise listed the amount of interest income as zero and stated:

This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Countrywide Home Loans] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs also included a Form 1099–MISC with the amended return, listing the amount of non-employee compensation as zero and stating:

This correcting Form 1099–MISC is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [National Safety Associates, Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Sarah V. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs seek $8,334.00, plus interest, for the federal income tax withheld by the IRS for their refund claim for the 2004 tax year.

*Tax Year 2005*

On or before May 16, 2006, the plaintiffs filed their federal income tax return Form 1040 for the taxable year ending December 31, 2005, reporting taxable income of $2,218.00 and a reported tax due of $0.00. The Form 1040 reported $10,509.00 in capital gains, interest income of $480.00, ordinary dividend income of $1,036.00 and a loss of $23,720.00. Included with plaintiffs' return was Form W–2 which reported income from Steven T. Waltner's wages in the amount of $68,856.00 and income tax withholding in the amount of $4,717.00. The Form 1040 reported an overpayment of $6,717.00, which was refunded on June 5, 2006.

Subsequently, on January 24, 2008, the plaintiffs filed an amended income tax return, Form 1040X, for the 2005 taxable year, reporting adjusted gross income in the amount of $0.00 and an overpayment of $12,299.00. Plaintiffs requested a refund in the amount of $5,582.00. Plaintiffs indicate the return "filed by Plaintiffs on or about January 24, 2008 for the year 2005 contains no mathematical errors, and the figures for adjusted gross income, standard deduction and exemptions calculate to no taxable income and $0 in tax, which calculations are substantially correct." (internal citations omitted).

As with the plaintiffs' 2004 amended income tax return, plaintiffs filed a number of Forms with their 2005 amended income tax return. Plaintiffs filed a Form 4852, Substitute for Form W–2, reporting Steven T. Waltner's wages as zero and asserting the original Form W–2 was incorrect and that payer, New Century Mortgage Corp. "erroneously alleged payments of IRC section 3401(a) and 3121(a) 'wages' " which plaintiffs disputed, stating Mr. Waltner "received no such 'wages.' " In the entry on the Substitute for Form W–2 which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a)."

The plaintiffs also included a Form 1099–DIV with the amended 2005 return, listing the amount of dividends received as zero and stating:

This correcting Form 1099–DIV is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Citigroup Global Markets Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "dividends" reportable under IRC 6042 [26 U.S.C. § 6042]. The 1099–DIV should not have been issued as NO such payments were received. Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

In addition, plaintiffs included a number of Forms 1099–INT with the amended return.

For the first Form 1099–INT, the plaintiffs listed the amount of interest income as zero and stated:

> This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Keypoint Credit Union] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

For the second Form 1099–INT, the plaintiffs likewise listed the amount of interest income as zero and stated:

> This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Countrywide Home Loans] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

For the third Form 1099–INT, the plaintiffs listed the amount of interest income as zero and stated:

> This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Western Federal Credit Union] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

The plaintiffs included two Forms 1099–MISC with the amended return. For the first Form 1099–MISC, the plaintiffs listed the amount of non-employee compensation as zero and stated:

> This correcting Form 1099–MISC is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [National Safety Associates, Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Sarah V. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

For the second Form 1099–MISC, the plaintiffs listed the amount of non-employee compensation as zero and stated:

> This correcting Form 1099–MISC is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Coast Hills Community Church] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Sarah V. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs also included a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request with their 2005 amended income tax return, lowering their ordinary dividends from $987.30 to zero stating "the entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or Business' within the meaning of 26 USC 7701(a)(26) [definition of trade or business]; therefore, no Form 1041 and attendant Form K–1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Ordinary Dividends' should be zero." Plaintiffs seek $5,582.00, plus interest, as a refund claim for the tax year 2005.

*Tax Year 2006*

On or before April 27, 2007, the plaintiffs filed their federal income tax return Form 1040 for the taxable year ending December 31, 2006, reporting taxable income of $130,420.00 and a reported tax of $17,705.00.

Plaintiffs also reported withholding credits of $4,640.00 for a tax balance due of $13,065.00. The Form 1040 also reported $83,289.00 in capital gains, taxable interest income of $480.00, ordinary dividend income of $1,036.00 and a loss of $3,020.00. Included with plaintiffs' return was Form W–2 which reported income from Steven T. Waltner's wages in the amount of $69,427.00 and income tax withholding in the amount of $4,640.00.

Subsequently, on January 19, 2008, the plaintiffs filed an amended income tax return, Form 1040X for the 2006 taxable year, reporting adjusted gross income in the amount of $0.00 and an overpayment of $12,074.00. Plaintiffs requested a refund in the amount of $12,074.00. Plaintiffs indicate the return "filed by Plaintiffs on or about January 19, 2008 for the year 2006 contains no mathematical errors, and the figures for adjusted gross income, standard deduction and exemptions calculate to no taxable income and $0 in tax, which calculations are substantially correct." (internal citations omitted).

As with the plaintiffs' 2004 and 2005 amended income tax return, the plaintiffs filed Form 4852 and Forms 1099 with their 2006 amended income tax return. Plaintiffs filed Form 4852, Substitute for Form W–2, reporting Steven T. Waltner's wages as zero and asserting the original Form W–2 was incorrect and payer, New Century Mortgage Corp. "erroneously alleged payments of IRC Section 3401(a) and 3121(a) 'wages'" which plaintiffs disputed, stating Mr. Waltner "received no such 'wages.'" In the entry on the Substitute for Form W–2 which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a)."

The plaintiffs included a Form 1099–DIV with the 2006 amended return, listing the amount of dividends received as zero and stating:

This correcting Form 1099–DIV is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Citigroup Global Markets Inc.] which erroneously alleges a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "dividends" reportable under IRC 6042 [26 U.S.C. § 6042 (2006) ]. The 1099–DIV should not have been issued as NO such payments were received. Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

Plaintiffs also included a Form 1099–INT with the amended return, listing the amount of interest income as zero and stating:

This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Washington Mutual Bank] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs included three Forms 1099–MISC with the amended return. For the first Form 1099–MISC, the plaintiffs listed the amount of non-employee compensation as zero and stated:

This correcting Form 1099–MISC is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [NSA, Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Sarah V. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

For the second Form 1099–MISC, the plaintiffs likewise listed the amount of nonemployee compensation as zero and stated:

This correcting Form 1099–MISC is submitted to rebut a document known to have been submitted by the party identified

above as "PAYER" [NSA LLC] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Sarah V. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

For the third Form 1099–MISC, the plaintiffs listed the amount of non-employee compensation as zero and stated:

> This correcting Form 1099–MISC is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Arbonne International, Inc.] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Sarah V. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

Moreover, the plaintiffs included a Form 1099–S with the 2006 amended return, listing the amount of gross proceeds as zero and stating:

> This correcting Form 1099–S was submitted to rebut a document known to have been submitted by the party identified above as "FILER" [First American Title Insurance Co.] which erroneously alleges a payment to the party identified above as the "TRANSFEROR" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct, and complete.

Finally, plaintiffs also included a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request with their 2006 amended income tax return. Plaintiffs claimed the amount of ordinary dividends listed as $1,113.34 on Schedule K–1 by the Sarah V. Waltner Trust was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K–1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Ordinary dividends' should be zero." Additionally, plaintiffs claimed the amount of qualified dividends, listed as $353.00 on Schedule K–1 by the Sarah V. Waltner Trust, was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K–1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Qualified dividends' should be zero." Finally, plaintiffs claimed that the amount of net long-term capital gain listed as $83,074.11 on Schedule K–1 by the Sarah V. Waltner Trust was incorrect and should be zero. Plaintiffs stated, "[t]he entity [Sarah V. Waltner Trust] reporting this figure is not a 'Trade or business' within the meaning of 26 USC 7701(a)(26); therefore, no Form 1041 and attendant Form K–1 should have been filed/issued. Amount of beneficiary's [Sarah V. Waltner] 'Net long term capital gain' should be zero."

Plaintiffs seek $11,139.00, plus interest, for the their refund claim for the tax year 2006 and allege that the defendant "has wrongfully taken our federal tax returns for tax years 2007 and 2008 and applied them to the alleged tax liability for 2006, which alleged liability has been disproved by our timely filed and corrected amended return for that year."

*Tax Year 2007*

On or before February 12, 2008, the plaintiffs filed their federal income tax return Form 1040 for the taxable year ending December 31, 2007, reporting taxable income of $0.00, a reported tax due of $0.00, and an overpayment of $8,480.88, which was credited to plaintiffs' tax account for their 2006 taxable year. Plaintiffs indicate the return contained "no mathematical errors, and the figures for adjusted gross income of $4,548, standard deduction and exemptions calculate to no taxable income and $0 tax, which calculations are substantially correct." (internal citations omitted).

With their Form 1040, the plaintiffs filed a Form 4852, for a Substitute for Form W–2, reporting Steven T. Waltner's wages as zero and asserting the Form W–2 was incorrect and payer, New Century Mortgage Corp. "erroneously alleged payments of IRS [sic] Section 3401(a) 'wages'" which plaintiffs disputed, stating Mr. Waltner "received no such 'wages.'" In the entry on the Substitute for Form W–2, which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a)."

Additionally, plaintiffs filed a Form 4852, for a Substitute for Form 1099–R, asserting the original Form 1099–R was incorrect and that payer, JPMorgan Retirement Plan SVCS, "erroneously alleged payment of a gross distribution of taxable 'gains, profit or income' made in the course of an IRS § 7701(a)(26) 'trade or business,'" which plaintiffs disputed, stating Mr. Waltner "received received no such 'gains, profit or income' from a 'U.S.' 'employer.'" On the Substitute for Form 1099–R, which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None, since most companies refuse to issue forms correctly, out of ignorance of legal definition of a 'U.S.' 'employer,' 'employee,' and 'wages' as defined in [26 U.S.C. § ] 3401 and [26 U.S.C. § ] 3121."

The plaintiffs also included a Form 1099–INT with their Form 1040 tax return, for the 2007 tax year, listing the amount of interest income received as zero and stating:

> This correcting Form 1099–INT is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Washington Mutual Bank] which erroneously alleged a payment to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of

my knowledge and belief, it is true, correct and complete.

Plaintiffs filed two amended returns for the 2007 taxable year, the first on February 25, 2008. Plaintiffs claim they "filed a lawful and timely amended return for tax year 2007 upon our receipt of a copy of another information return." Plaintiffs then filed a second amended return for the 2007 taxable year on May 5, 2008, stating they "became aware in late April, 2008 that we had inadvertently included information from the wrong information return (one from a previous year), and immediately amended the return again on May 5, 2008 in our attempt to make it accurate and complete." The second amended return, Form 1040X, filed on April 27, 2008, and reported taxable income of $0.00, an overpayment of $8,481.00 and an additional overpayment of $2,977.00. Plaintiffs indicate the return "filed by Plaintiffs on or about April 27, 2008 for the year 2007 contains no mathematical errors, and the figures for adjusted gross income of $4,548, standard deduction and exemptions calculate to no taxable income and $0 tax, which calculations are substantially correct." (internal citations omitted).

As with the original Form 1040, the plaintiffs included a Form 4852 for a Substitute W–2 for New Century Mortgage Corp., a Form 4852 for a Substitute for Form 1099–R for JPMorgan Retirement Plan SVCS and Form 1099–INT for Washington Mutual Bank. With the second amended tax return, plaintiffs included an additional Form 4852, for a Substitute for Form W–2, reporting Steven T. Waltner's wages as zero and asserting the Form W–2 was incorrect and that payer, Spherion Atlantic Enterprises, LLC "erroneously alleged payments of IRC Section 3401(a) 'wages,'" which plaintiffs disputed, stating Mr. Waltner "received no such 'wages.'" In the entry on the Substitute for Form W–2 which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None, since most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a)."

Finally, plaintiffs included a Form 1099–DIV with the second amended return, listing the amount of dividends received as zero and stating:

This correcting Form 1099–DIV is submitted to rebut a document known to have been submitted by the party identified above as "PAYER" [Citigroup Global Markets Inc.] which erroneously alleged a payment or payments to the party identified above as the "RECIPIENT" [Steven T. Waltner] of "gains, profit or income" made in the course of a "trade or business." Under penalty of perjury, I declare that I have examined this statement and to the best of my knowledge and belief, it is true, correct and complete.

Plaintiffs seek $11,457.88, plus interest, for their refund claim for the 2007 tax year. Plaintiffs allege that the government "improperly took the $8,480.88 refund owed to Plaintiffs and applied it to tax year 2006," and that after plaintiff filed their amended returns, which plaintiffs allege "showed an overpayment and refund owed to Plaintiffs of $2,977.00." Plaintiffs allege that the government "has wrongfully taken our federal tax refund from our 2007 [Form] 1040 and applied it to the alleged tax liability for 2006, which alleged liability has been disproved by our timely filed and corrected amended return for that year."

*Tax Year 2008*

After filing a request for an extension, plaintiffs filed their federal income tax return Form 1040 for the taxable year ending December 31, 2008, on August 11, 2009. Plaintiffs reported zero tax liability. Plaintiffs indicate that the return "filed by Plaintiffs on or about August 11, 2009 for the year 2008 contains no mathematical errors, and the figures for adjusted gross income of $21,922.84, itemized deductions and exemptions calculate to no taxable income and $0 tax, which calculations are substantially correct." (internal citations omitted).

With their Form 1040, plaintiffs filed three Forms 4852, Substitute for Forms W–2. The first was regarding Steven T. Waltner's employment for TekSystems, Inc. Plaintiff Steven T. Waltner claimed that, "I have been unable to obtain (or have received an incor-

rect) Form W–2." Plaintiff Steven T. Waltner stated, "I have notified the IRS of this fact. The amounts shown on line 7 [Form W–2 wages, tips, other compensation, and taxes withheld] or line 8 [Form 1099–R, distributions from pensions, annuities, retirement/profit-sharing plans, IRAs, insurance contracts, etc.] are my best estimates for all wages or payments made to me and tax withheld by my employer or payer [TekSystems, Inc]." In the entry on the Substitute for Form W–2, which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None."

The second Form 4852, Substitute for Form W–2 included with the Form 1040 was for employer Spherion Atlantic Enterprises. As with the Form 4852 with TekSystems, Inc., plaintiff Steven T. Waltner claimed "I have been unable to obtain (or have received an incorrect) Form W–2." Plaintiff Steven T. Waltner stated, "I have notified the IRS of this fact. The amounts shown on line 7 [Form W–2 wages, tips, other compensation, and taxes withheld] or line 8 [Form 1099–R, distributions from pensions, annuities, retirement/profit-sharing plans, IRAs, insurance contracts, etc.] are my best estimates for all wages or payments made to me and tax withheld by my employer or payer [Spherion Atlantic Enterprises]." In the entry on the Substitute for Form W–2, which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None."

The third Form 4852, Substitute for Form W–2 included with the Form 1040 was for employer Perot Systems Corp. As with the other two Form 4852s, plaintiff Steven T. Waltner claimed "I have been unable to obtain (or have received an incorrect) Form W2." Plaintiff Steven T. Waltner stated, "I have notified the IRS of this fact. The amounts shown on line 7 [Form W–2 wages, tips, other compensation, and taxes withheld] or line 8 [Form 1099–R, distributions from pensions, annuities, retirement/profit-sharing plans, IRAs, insurance contracts, etc.] are my best estimates for all wages or payments

made to me and tax withheld by my employer or payer [Perot Systems Corp]." In the entry on the Substitute for Form W–2, which asked to "[e]xplain your efforts to obtain Form W–2, Form 1099–R, or Form W–2c, Corrected Wage and Tax Statement," plaintiff Steven T. Waltner stated: "None."

Finally, plaintiff Steven T. Waltner included a Form 1099–B with the plaintiffs' 2008 return, listing the amount of gross proceeds as zero and stating:

> This correcting Form 1099–B is submitted to rebut a document known to have been submitted by the party identified above as "Payer" [Citigroup Global Markets, Inc.] and "Broker" [Citigroup Global Markets, Inc.] which erroneously alleged a payment to the party identified above as "Steven T. Waltner" of "gross proceeds" in connection with a "trade or business."

Plaintiffs claim "the IRS has wrongfully taken our federal tax refund from our 2008 [Form] 1040 and applied it to an alleged prior tax liability which does not exist." The plaintiffs claim that "the IRS applied $4,884.00 (the amount it claimed was the total of our federal withholding, and thus our allowed refund, for tax year 2008) to the alleged (but disproved) tax liability for 2006, even though the IRS knew we had filed an amended return demonstrating no tax liability for that year. The amount of our overpayment for tax year 2008, and the amount of our claim for refund, is actually $10,678.77." Therefore, plaintiffs seek $10,678.77, plus interest, for their refund claim for the 2008 tax year.

For each of the tax years in which plaintiffs filed an amended tax return, tax years 2003, 2004, 2005, 2006, 2007, plaintiffs filed a Form 4852, and in each case reported plaintiffs' wages as zero asserting that the Form W–2 was incorrect because the payer "erroneously alleged payments of IRC Section 3401(a) [definition of wages] and 3121(a) [definition of wages for employment] 'wages.'" Moreover, for each of those years plaintiffs made no efforts to obtain a corrected Form W–2 because "most companies refuse to issue forms correctly listing payments of 'wages' as defined in [26 U.S.C. § ] 3401(a) and [26 U.S.C. § ] 3121(a).'"

A similar, consistent pattern emerges for the correcting Forms 1099–DIV. For each of the tax years in which plaintiffs filed an amended tax return, tax years 2003, 2004, 2005, 2006, and 2007, plaintiffs filed a Form 1099–DIV listing the amount of dividends received as zero. For 2003, 2004, 2005, and 2006, plaintiffs asserted that the correcting Forms 1099–DIV were "submitted to rebut a document known to have been submitted" because the Form 1099–DIV "erroneously alleged a payment" of dividends to the plaintiffs and concluding the "1099–DIV should not have been issued as NO such payments were received." The exception is the plaintiffs' 2007 amended tax return, for which the Form 1099–DIV stated that the Form 1099–DIV was included because the payer "erroneously alleged a payment" of " 'gains, profit or income' made in the course of a 'trade or business.'" This was the only Form 1099–DIV submitted by plaintiffs which used the phrase " 'gains, profit or income' made in the course of a 'trade or business.'" The language of " 'gains, profit or income' made in the course of a 'trade or business,' " however, was used by plaintiffs with every correcting Form 1099–INT submitted in their amended returns.

Similarly, for the tax years 2004, 2005, 2006, 2007, plaintiffs filed Forms 1099–INT with their amended returns, asserting each of the correcting Forms 1099–INT were "submitted to rebut a document known to have been submitted" because the Form 1099–INT "erroneously alleged a payment" of " 'gains, profit or income' made in the course of a 'trade or business,' " and instead listed the amount of interest income received as zero. Likewise, for the tax years 2004, 2005, 2006, plaintiffs filed Forms 1099–MISC with their amended returns, listing the amount of non-employee compensation as zero, and using the same language as the Forms 1099–INT, asserting that each correcting Form 1099–MISC was "submitted to rebut a document known to have been submitted" because the Form 1099–MISC "erroneously alleged a payment" of " 'gains, profit or income' made in the course of a 'trade or business.'"

For the tax years 2003, 2005, 2006, plaintiffs also filed a Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request. For each of these three years the plaintiffs alleged that their ordinary dividends were zero and that the Sarah V. Waltner Trust, which had reported ordinary dividends, was not a "'Trade or business' within the meaning of 26 USC 7701(a)(26) [definition of trade or business]" and that therefore, "no Form 1041 and attendant Form K–1 should have been filed/issued."[2]

Plaintiffs allege for each of the tax years, including tax years 2003, 2004, 2005, 2006, and 2007, that the filing of an amended return constituted a claim for refund and allege, "[p]laintiffs have not seen nor been provided with any evidence that this return does not constitute a valid claim for refund pursuant to 26 CFR § 301.6402–3(a) or any other law or regulation, nor have we received any challenge to its validity by the Defendant...." For the 2008 tax year, plaintiffs sent the IRS a letter dated October 3, 2009, informing the IRS that "no amount of our [2008] refund should be applied to tax year 2006, as no liability exists for that year per our amended return."

On December 30, 2009, the IRS filed a Notice of Federal Tax Lien in the County Recorder's Office of Maricopa County, Arizona against plaintiff Sarah V. Waltner. The amount of the Notice of Federal Tax Lien was for $40,000.00, for penalties assessed for the tax years 2003, 2004, 2005, 2006, and 2007.

Plaintiffs filed their complaint in the United States Court of Federal Claims on April 12, 2010 seeking a claim for refund for six tax years: 2003 (Count I), 2004 (Count II), 2005 (Count III), 2006 (Count IV), 2007 (Count V), and 2008 (Count VI). Plaintiffs seek refund of all income withheld and paid for the income for each tax year at issue, as well as "interest according to law." Plaintiffs allege that "[t]he amended returns filed by Plaintiffs for the years 2003 through 2007 proved that Plaintiffs had, in fact, no tax liability for those years and were due a refund of overpayment made against the possibility of later-proven income tax liability." For the 2008 tax year, plaintiffs claim "the IRS has wrongfully taken our federal tax refund from our 2008 [Form] 1040 and applied it to an alleged prior tax liability which does not exist." Plaintiffs also seek damages for the alleged violation by the United States of a state statute, A.R.S. § 33–420, a recording statute for a tax lien filed against plaintiff Sarah V. Waltner on December 30, 2009 in Maricopa County, Arizona (Count VII).

The defendant has filed a partial motion to dismiss some of plaintiffs' claims and a motion for summary judgment for the remainder of plaintiffs' claims. In its reply brief, however, the defendant stated: "since it now is clear that the Court lacks jurisdiction over the entire case, we now believe that a judgment is inappropriate." The defendant argued in its reply brief that the Court of Federal Claims lacks jurisdiction over all the taxable years at issue, 2003–2008, or in the alternative, that plaintiffs fail to state a claim for the taxable years 2004–2008. In response to the defendant's partial motion to dismiss and motion for summary judgment, the plaintiffs have filed a cross-motion for summary judgment, alleging, "[p]laintiffs are entitled to summary judgment on our claims for refund as a matter of law because the IRS's sole defense is insufficient, unproven and un-provable, [sic] and because the government's own documents ... all support Plaintiffs' claims and prove that its only defense is completely bogus and without merit." Despite having filed a cross-motion for sum-

---

2. For the tax year 2003, the plaintiffs also claimed their qualified dividends, net long-term capital gains and net long-term capital gains after May 5, 2003 were zero and that because the Sarah V. Waltner Trust was not a "'Trade or business' within the meaning of 26 USC 7701(a)(26)," the Sarah V. Waltner Trust also should not have filed a Form 1041 and attendant Form K–1 for the plaintiffs' qualified dividends, net long-term capital gains and net long-term capital gains after May 5, 2003. Applying the same logic, plaintiffs also claimed for the tax year 2006 that their qualified dividends and net long-term capital gains were zero and that because the Sarah V. Waltner Trust was not a "'Trade or business' within the meaning of 26 USC 7701(a)(26)," the Sarah V. Waltner Trust also should not have filed a Form 1041 and attendant Form K–1 for the plaintiffs' qualified dividends and net long-term capital gains.

mary judgment, plaintiffs also allege that "[p]laintiffs have submitted a well-pled Complaint, supported by documents of first-hand knowledge, which demonstrate clear and genuine issues of material fact in controversy and which represent valid monetary claims against the government."

## DISCUSSION

■ Plaintiffs are proceeding *pro se.* When determining whether a complaint filed by *pro se* plaintiffs is sufficient to invoke review by a court, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). However, "there is no 'duty [on the part] of the trial court ... to create a claim which [plaintiff] has not spelled out in his [or her] pleading....'" *Scogin v. United States,* 33 Fed.Cl. 285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.,* 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Minehan v. United States,* 75 Fed. Cl. 249, 253 (2007). "While a *pro se* plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the *pro se* plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States,* 93 Fed.Cl. 163, 165 (2010) (citing *Hughes v. Rowe,* 449 U.S. at 9, 101 S.Ct. 173 and *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed.Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), *reh'g and reh'g en banc denied* (Fed.Cir.2002)).

■ "Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*" *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.), *reh'g*

*and reh'g en banc denied* (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *see also Arbaugh v. Y & H Corp.,* 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *Rick's Mushroom Serv., Inc. v. United States,* 521 F.3d 1338, 1346 (Fed.Cir.2008); *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed. Cir.1998); *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (Fed.Cir. 1993); *United States v. Newport News Shipbuilding and Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991); *Thompson v. United States,* 88 Fed.Cl. 263, 266 (2009); *North Star Alaska Hous. Corp. v. United States,* 76 Fed.Cl. 158, 185, *appeal dismissed,* 226 Fed. Appx. 1004 (Fed.Cir.2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed. Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990)); *see also Entegris, Inc. v. Pall Corp.,* 490 F.3d 1340, 1343 (Fed.Cir. 2007); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.").

■ Pursuant to Rules of the United States Court of Federal Claims (RCFC) and Rule 8(a) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2010); Fed.R.Civ.P. 8(a)(1), (2) (2011). *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555–57, 570, 127 S.Ct. 1955). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463

U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)), *reh'g denied* (Fed.Cir.1997); *see also Edelmann v. United States*, 76 Fed.Cl. 376, 379 (2007). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998); *see also McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1363 n. 9 (Fed.Cir.2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, *Federal Practice and Procedure* § 1286 (3d ed.2004)); *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As stated in *Ashcroft v. Iqbal*, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' [*Bell Atlantic Corp. v. Twombly*,] 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

█ When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2002), *cert. denied*, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1338 (Fed.Cir.2001) (quoting *New Valley Corp. v. United States*, 119 F.3d 1576, 1580 (Fed.Cir. 1997)), *cert. denied*, 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed.Cir. 2000).

█ The Tucker Act grants jurisdiction to this court as follows:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 875 (Fed. Cir.), *reh'g and reh'g en banc denied* (Fed. Cir.2007), *cert. denied*, 552 U.S. 1142, 128 S.Ct. 1082, 169 L.Ed.2d 810 (2008); *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States...." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *see also United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Radioshack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed.Cir.2009); *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d at 1343 ("[P]laintiff must ... identify a substantive source of law that creates the right to recovery of money damages against the United States."). In *Ontario Power Generation, Inc. v. United States*, 369 F.3d 1298 (Fed.Cir. 2004), the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

The underlying monetary claims are of three types.... First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver.... Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." *Eastport S.S. [Corp. v. United States,* 178 Ct.Cl. 599,] 372 F.2d [1002,] 1007–08 [ (1967) ] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket' " (quoting *Clapp v. United States,* 127 Ct.Cl. 505, 117 F.Supp. 576, 580 (1954)))... . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." *Eastport S.S. [Corp. v. United States* ], 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." *Id.; see also [United States v.] Testan,* 424 U.S. [392,] 401–02, 96 S.Ct. 948 ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' " (quoting *Eastport S.S. [Corp. v. United States* ], 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

*Ontario Power Generation, Inc. v. United States,* 369 F.3d at 1301.

■ To prove that a statute or regulation is money mandating, plaintiff must demonstrate that an independent source of substantive law relied upon "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell,* 463 U.S. at 217, 103 S.Ct. 2961 (quoting *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 and *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)); *see also Hamlet v. United States,* 63 F.3d 1097, 1107 (Fed.Cir.), *reh'g denied, en banc suggestion declined* (Fed.Cir.1995), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). "Additionally, the specific authority granting money relief must be distinct from the Tucker Act itself." *Cottrell v. United States,* 42 Fed.Cl. 144, 152 (1998). "If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act." *Fisher v. United States,* 402 F.3d 1167, 1173 (Fed.Cir. 2005); *see also Doe v. United States,* 74 Fed.Cl. 794, 796 (2006).

■ For this court to exercise its jurisdiction over a plaintiff's federal tax refund claim, a petitioning party must first satisfy the tax refund schematic detailed in Title 26 of the Internal Revenue Code, (*see, e.g.,* 26 U.S.C. § 7422 (2006) and 26 U.S.C. § 6511 (2006)), which establishes that a claim for refund must be filed with the IRS before filing suit in federal court, and establishes strict deadlines for filing such claims. *See United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. 1, 4, 128 S.Ct. 1511, 170 L.Ed.2d 392 (2008); *United States v. Dalm,* 494 U.S. 596, 609–10, 110 S.Ct. 1361, 108 L.Ed.2d 548, *reh'g denied,* 495 U.S. 941, 110 S.Ct. 2195, 109 L.Ed.2d 523 (1990); *Buser v. United States,* 85 Fed.Cl. 248, 256 (2009). Moreover, for a refund claim, the court only may hear claims for which the petitioning taxpayer has fulfilled all of his or her tax liabilities for the tax year in question before the refund claim is heard. *Flora v. United States,* 357 U.S. 63, 72–73, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958) (*Flora I* ), *aff'd on reh'g,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (*Flora II* ), *reh'g denied,* 362 U.S. 972, 80 S.Ct. 953, 4 L.Ed.2d 902 (1960). In *Flora II,* the United States Supreme Court again clearly stated that 28 U.S.C. § 1346(a)(1) (2006) requires "payment of the full tax be-

fore suit...." [3] *Flora II,* 362 U.S. at 150–51, 80 S.Ct. 630; *see also Shore v. United States,* 9 F.3d 1524, 1526 (Fed.Cir.1993) ("The full payment requirement of Section 1346(a)(1) and *Flora* applies equally to tax refund suits brought in the Court of Federal Claims....") (citing *Tonasket v. United States,* 218 Ct.Cl. 709, 711–12, 590 F.2d 343 (1978)).

Before filing a claim in federal court, a plaintiff also is required to file a claim with the IRS for the amount of the alleged refund, pursuant to 26 U.S.C. § 7422(a), which states:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a); *see also Computervision Corp. v. United States,* 445 F.3d 1355, 1363 (Fed.Cir.), *reh'g and reh'g en banc denied,* 467 F.3d 1322 (Fed.Cir.2006), *cert. denied,* 549 U.S. 1338, 127 S.Ct. 2033, 167 L.Ed.2d 762 (2007). Essentially, section 7422(a) functions as a waiver of the government's sovereign immunity in tax refund suits. *Chicago Milwaukee Corp. v. United States,* 40 F.3d 373, 374 (Fed.Cir.1994); *see also Gluck v. United States,* 84 Fed.Cl. 609, 613 (2008). "[S]ection 7422(a) creates a jurisdictional prerequisite to filing a refund suit." *Id.* (citing *Chicago Milwaukee Corp. v. United States,* 40 F.3d at 374 (citing *Burlington N., Inc. v. United States,* 231 Ct.Cl. 222, 684 F.2d 866, 868 (1982))).

■ The United States Supreme Court has indicated that:

A taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government either in United States district court or in the United States Court of Federal Claims. The Internal Revenue Code specifies that before doing so, the taxpayer must comply with the tax refund scheme established in the Code. That scheme provides that a claim for a refund must be filed with the Internal Revenue Service (IRS) before suit can be brought, and establishes strict timeframes for filing such a claim.

*United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. at 4, 128 S.Ct. 1511 (citations omitted); *see also RadioShack Corp. v. United States,* 566 F.3d at 1360 ("[I]n the context of tax refund suits, the [Supreme] Court has held that the Court of Federal Claims's Tucker Act jurisdiction is limited by the Internal Revenue Code, including 26 U.S.C. § 7422(a)."). Once a party has established compliance with 26 U.S.C. § 7422(a), the party may, if successful, also recover interest for its claim for refund, if successful. *See Deutsche Bank AG v. United States,* 95 Fed. Cl. 423, 427 n. 3 (2010) (citing *Brown & Williamson, Ltd. v. United States,* 231 Ct.Cl. 413, 688 F.2d 747, 752 (1982)) ("There is no question, however, that this court has subject matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006), over claims, such as the present one, seeking to recover statutory interest on income tax refunds.").

■ Further, in order for a tax refund case to be duly filed in a federal court under section 7422(a), the filing must comply with the timing requirements set forth in 26 U.S.C. § 6511(a):

> The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress. A necessary corollary of this rule is that when Congress attaches conditions to

---

3. Section 1346(a)(1) reads:
The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
 (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws....
28 U.S.C. § 1346(a)(1).

legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied. When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity.

*Block v. North Dakota ex rel. Bd. of Univ. and School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *see also Buser v. United States,* 85 Fed.Cl. at 257. To reiterate, the applicable language of section 6511(a) states:

> Claim for credit or refund of an overpayment of any tax imposed by this title . . . shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. . . .

26 U.S.C. § 6511(a); *see also* Treas. Reg. § 301.6511(a)-1 (2011) ("In the case of any tax . . .: If a return is filed, a claim for credit or refund of an overpayment must be filed by the taxpayer within 3 years from the time the return was filed or within 2 years from the time the tax was paid, whichever of such periods expires the later."). As articulated by the United States Supreme Court in *Commissioner v. Lundy,* 516 U.S. 235, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996):

> A taxpayer seeking a refund of overpaid taxes ordinarily must file a timely claim for a refund with the IRS under 26 U.S.C. § 6511. That section contains two separate provisions for determining the timeliness of a refund claim. It first establishes a filing deadline: The taxpayer must file a claim for a refund "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a) (incorporating by reference 26 U.S.C. § 6511(a)). It also defines two "look-back" periods: If the claim is filed "within 3 years from the time the return was filed," ibid., then the taxpayer is entitled to a refund of "the portion of the tax paid within the 3 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(A) (incorporating by reference 26 U.S.C. § 6511(a)). If the claim is not filed within that 3-year period, then the taxpayer is entitled to a refund of only that "portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B) (incorporating by reference § 6511(a)).

*Comm'r v. Lundy,* 516 U.S. at 239–40, 116 S.Ct. 647 (footnote omitted); *see also United States v. Clintwood Elkhorn Mining Co.,* 553 U.S. at 8, 128 S.Ct. 1511 (determining that the language of section 6511(a) clearly states that taxpayers "must comply with the Code's refund scheme before bringing suit, including the requirement to file a timely administrative claim."). The Supreme Court in *Lundy* also noted that a timely filing was a prerequisite for the Court of Federal Claims to have jurisdiction for a refund claim. *Comm'r v. Lundy,* 516 U.S. at 240, 116 S.Ct. 647 ("Unlike the provisions governing refund suits in United States District Court or the United States Court of Federal Claims, which make timely filing of a refund claim a jurisdictional prerequisite to bringing suit, *see* 26 U.S.C. § 7422(a); *Martin v. United States,* 833 F.2d 655, 658–659 (7th Cir.1987), the restrictions governing the Tax Court's authority to award a refund of overpaid taxes incorporate only the look-back period and not the filing deadline from § 6511.").

In sum, Congress has provided strict statutory guidelines laying out the statute of limitations for the filing of a federal tax refund claim:

> Read together, the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been "erroneously," "illegally," or "wrongfully collected," §§ 1346(a)(1), 7422(a), may not be maintained in any court.

*United States v. Dalm,* 494 U.S. at 602, 110 S.Ct. 1361.

*Tax Year 2003*

The defendant argues that the court lacks jurisdiction over plaintiffs' 2003 taxable year because plaintiffs' claim for refund was filed "more than three years after their original return was filed and more than two years after the tax was paid." Plaintiffs respond, however, that the Court of Federal Claims' six year general statute of limitation should apply.[4]

As described above, the tax code requires a claim for refund to be filed "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." 26 U.S.C. § 6511(a). Plaintiffs do not dispute that the claim for refund for the 2003 taxable year was filed more than three years after the original return was filed and more than two years after the tax was paid. Plaintiffs, however, allege that proper statute of limitations is not from the tax code, but the claim for refund for the 2003 taxable year is "properly brought under the Tucker Act, pursuant to which the statute of limitations is six years."

Plaintiffs further argue that "the Tucker Act's 6–year statute is appropriate per the reasoning of the Supreme Court in *Sun Oil v. Wortman* and the plain words of the Tucker Act itself."[5] Plaintiffs cite to the language of the Supreme Court in *Sun Oil v. Wortman* that, for the 2003 tax year, the "'bar of the statute does not extinguish the underlying right but merely causes the remedy to be withheld.'" (quoting *Sun Oil Co. v. Wortman*, 486 U.S. 717, 725, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988)). From this, plaintiffs appear to conclude, based on the *Sun Oil* decision, that "the Tucker Act allows this honorable Court to adjudicate this claim even if the refund itself must be withheld or denied us as a remedy." The defendant argues that "[p]laintiffs' reliance on *Sun Oil v. Wortman*, 486 U.S. 717, 108 S.Ct. 2117, 100

L.Ed.2d 743 (1988) is misplaced." The defendant notes that *Sun Oil v. Wortman* involved which state statute of limitations should be applied when several different state statutes of limitations were potentially applicable. Indeed, as the United States Supreme Court concluded in *Sun Oil:* "We hold, therefore, that Kansas did not violate the Full Faith and Credit Clause when it applied its own statute of limitations." *Id.* at 729, 108 S.Ct. 2117. The relevant Supreme Court decision regarding the statute of limitations for tax refund claims is *United States v. Dalm*, 494 U.S. 596, 110 S.Ct. 1361, which concluded that the statute of limitations for the filing of a federal tax refund claim is clear and "unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund, regardless of whether the tax is alleged to have been 'erroneously,' 'illegally,' or 'wrongfully collected,' §§ 1346(a)(1), 7422(a), may not be maintained in any court." *United States v. Dalm*, 494 U.S. at 602, 110 S.Ct. 1361.

The plaintiffs also cite to an unpublished, and, therefore, a non-precedential decision, *Wachovia Bank, N.A. v. United States*, 2005 WL 1155078 (M.D.Fla. Mar. 18, 2005), *rev'd*, 455 F.3d 1261 (11th Cir.2006). In *Wachovia Bank, N.A. v. United States*, a trustee sought a refund for erroneously filed and paid tax returns for the tax years 1997 and 1998, tax years for which the trust was exempt from federal income tax, and, therefore, was not required to file a tax return. The IRS denied the claim for refund because the plaintiff filed outside of the tax code's three-year statute of limitations for filing refund claims. *Id.* at *1. The court in *Wachovia Bank* concluded: "this Court interprets the language in Section 6511 'in respect of which tax the taxpayer is required to file a return' as meaning exactly what it says; it applies only to taxpayers who are required to file returns. Since Wachovia was not required to file a return, its refund request is not governed by

---

4. In their complaint the plaintiffs also argue that "California's statute of limitations is four years (and Plaintiffs had been residents of California in the year in question [2003] )," but do not provide any further explanation, nor argue that California's four year statute of limitations should apply.

5. In a footnote to the complaint, plaintiffs also state that the "[p]laintiffs submit to the decision of the Court as to whether the statute of limitations allows for six years instead of three for entitlement to a refund for this [2003] tax year."

the three year limitations period found in Section 6511." *Id.* at *3 (quoting 26 U.S.C. § 6511). Plaintiffs argue this decision evidences that "when a return was *not* required, the more general six-year limitation on civil actions against the United States is appropriate." (emphasis in original). Plaintiffs conclude that 26 U.S.C. § 6511 "limits the amount of refund possible when a refund claim is filed after the 3–year period but still contemplates such claims can be made and processed."

As the defendant notes, however, the United States District Court for the Middle District of Florida's decision was reversed and remanded by the United States Court of Appeals for the Eleventh Circuit, with instructions to dismiss the complaint for lack of subject matter jurisdiction. *See Wachovia Bank, N.A. v. United States,* 455 F.3d 1261, 1269 (11th Cir.2006). The Eleventh Circuit determined that the three-year limitations period for tax refund claims governed plaintiff's claim, and not the general six-year statute of limitations for claims against United States, notwithstanding the fact the plaintiff was never required to file the tax returns. The Eleventh Circuit indicated:

> The Supreme Court in [*United States v.*] *Dalm*[, 494 U.S. 596, 110 S.Ct. 1361] also recognized the primary purpose behind § 6511(a)'s three-year limitations period, one which strongly supports the applicability of § 6511(a) in the present case. The Court explained that "[t]he very purpose of statutes of limitations in the tax context is to bar the assertion of a refund claim after a certain period of time has passed, without regard to whether the claim would otherwise be meritorious." We do not "lift the statutory bar" simply because a taxpayer learns too late that her taxes were "paid in error" or that "she has a ground upon which to claim a refund."

*Wachovia Bank, N.A. v. United States,* 455 F.3d 1261, 1268 (quoting *United States v. Dalm,* 494 U.S. at 610 n. 7, 110 S.Ct. 1361) (internal citations omitted).

More recently, in a 2009 case, *RadioShack Corp. v. United States,* 566 F.3d 1358, the United States Court of Appeals for the Federal Circuit, cited with approval the Eleventh

Circuit's decision in *Wachovia Bank, N.A. v. United States,* indicating, "the Eleventh Circuit proceeded with its own statutory construction of the language of § 6511(a), finding that the provision was intended to cover all situations in which claims for refund are made." *RadioShack Corp. v. United States,* 566 F.3d at 1363 (citing *Wachovia Bank, N.A. v. United States,* 455 F.3d at 1266–69). The Federal Circuit also noted in *RadioShack Corp. v. United States* that: "Clearly, Congress did not intend to waive the United States's sovereign immunity and thereby expose the federal treasury to unknown claims from unspecified taxpayers for an unlimited period of time." *RadioShack Corp. v. United States,* 566 F.3d at 1363; *see also Strategic Hous. Fin. Corp. of Travis Cnty. v. United States,* 608 F.3d 1317, 1327 (Fed.Cir.) *reh'g and reh'g en banc denied* (Fed.Cir. 2010), *cert. denied.* —— U.S. ——, 131 S.Ct. 1513, 179 L.Ed.2d 308 (2011). Moreover, the United States Supreme Court even has indicated, "[t]hat a taxpayer does not learn until after the limitations period has run that a tax was paid in error, and that he or she has a round upon which to claim a refund, does not operate to lift the statutory bar." *United States v. Dalm,* 494 U.S. at 609 n. 7, 110 S.Ct. 1361.

As conceded by the plaintiffs, plaintiffs' claim for refund for the 2003 taxable year was filed more than three years after the original return was filed and more than two years after the tax was paid. Because the claim for refund was filed more than three years after the original return was filed and more than two years after the tax was paid, this court lacks jurisdiction over plaintiffs' claims pertaining to the 2003 taxable year. Plaintiffs' claim for refund for the 2003 taxable year is, therefore, dismissed.

*Tax Years 2004–2008*

 The defendant also argues its reply to its motion to dismiss, that the court lacks jurisdiction over plaintiffs' claims for refund for the 2004, 2005, 2006, 2007, and 2008 tax years because the plaintiffs failed to file proper claims for refund. Although the defendant did not raise this issue in its initial motion to dismiss, alleging only that the court lacked jurisdiction over plaintiffs' claim

for refund for the 2003 tax year, as noted above, "[s]ubject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte.*" *Folden v. United States*, 379 F.3d at 1354; *see also* RCFC 12(h)(3) (2010) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiffs argue that "[i]n order to perfectly understand the bizarre rationale of the government in attempting to convince this Court that it 'lacks jurisdiction' over all our claims, we can look to the Inquisition of Galileo...." The plaintiffs analogize their situation to that of Galileo and his belief of "heliocentrism." The plaintiffs state:

> In this case, it is the IRS thinking itself at the center of the universe, our government is the Holy Office, the Plaintiffs are being accused, wrongly yet vehemently, of a type of cultural heresy, and the almighty Information Return is the "divine and Holy Scripture." And the law is the sun. The IRS wants to censure anyone who dares to suggest that it revolves around the limits of the law, and that the law does not revolve around the IRS, and the Holy Office is ready literally to persecute anyone who has the audacity not to fall in line with the Holy Scripture of the W–2 and 1099.

As to defendant's argument that the plaintiffs' amended tax returns for the tax years 2004–2007 and tax return for 2008 were not properly filed claims for refund, plaintiffs respond that they "actually read the definitions written by Congress, the statutes themselves, and a host of Supreme Court jurisprudence, and finally understood how the tax law remains Constitutional and the taxing powers of the government remained limited. And we began to file proper and legally correct returns in accordance with that new and educated understanding." Additionally, plaintiffs also state that: "1) the *real* Holy Scriptures forbid bearing false witness; 2) the United States Constitution guarantees the natural right of every citizen to freedom of speech, to be master of his own testimony, and to petition his government for redress of grievances...." (emphasis in original) (footnotes omitted). The plaintiffs further argue that the government position is that "the IRS would like the public to believe (and this Court to interpret taxing statutes in such a way) that the government may tax the moon, tax the trees, tax the air, that there are no bounds to its taxing jurisdiction, though it will not come right out and say so."

Plaintiffs do not challenge the defendant's assertions that "[p]laintiffs filed their amended returns for the years 2003 through 2006, and original returns for 2007 and 2008, which reported zero income, except for unemployment compensation; reported deductions and exemptions; and stated an amount demanded as a refund." Indeed, the plaintiffs themselves indicate for each tax year, the return "contains no mathematical errors" and the deductions and exemptions "calculate to no taxable income and $0 in tax," except for the 2004 tax year, in which plaintiffs acknowledge $370.00 in taxable income, resulting from unemployment compensation received by plaintiff Sarah V. Waltner, but still claim "$0 in tax" liability. Moreover, in their complaint, the plaintiffs claimed that the original filed tax returns (except for taxable year 2008), "contained certain factual errors of which Plaintiffs were ignorant of at the time we signed them. The most significant errors were in the erroneous reporting by third parties on information returns filed about us which Plaintiffs innocently and in ignorance attached to our original returns and used as the basis for figuring our tax liability."

Similarly, for each of the tax years in which plaintiffs filed an amended tax return, tax years 2003, 2004, 2005, 2006 and 2007, the plaintiffs filed a Form 4852 and for each year listed plaintiffs' wages as zero, alleging that plaintiffs' employers incorrectly reported payments of wages. Plaintiffs also stated they made no efforts to obtain a corrected form W–2 from any employer because companies refuse to issue Form W–2s. Just as plaintiffs allege zero wages, for the tax years, 2003, 2004, 2005, 2006 and 2007, plaintiffs also allege no dividends and filed Forms 1099–DIV with their amended returns, arguing that third party payers had erroneously alleged payment of dividends to the plaintiffs. Likewise, for the tax years 2004, 2005, 2006 and 2007, plaintiffs allege zero interest income on Forms 1099–INT and claim the

third party payers incorrectly alleged payments to the plaintiffs in the form of interest income and again allege nonemployee compensation for the tax years 2004, 2005, and 2006 on Forms 1099–MISC. Finally, for the tax years 2003, 2005, and 2006, plaintiffs allege ordinary dividends received from the Sarah V. Waltner Trust were zero and the trust improperly filed Forms 1041 and reported dividends to the plaintiffs.

Plaintiffs attempt to rely on a non-precedential decision, the United States Court of Appeals for the Ninth Circuit decision in *United States v. Long*, 618 F.2d 74 (9th Cir.1980). Plaintiffs argue *Long* states that the IRS may make a determination of tax liability, even when a tax return contains zeros. In *Long*, the Ninth Circuit determined zeros on a tax form could "constitute 'information relating to the taxpayer's income from which the tax can be computed.'" *Id.* at 75. The Ninth Circuit explained:

The I.R.S. could calculate assessments from Long's strings of zeros, just as it could if Long had entered other numbers. The resulting assessments might not reflect Long's actual tax liability, but some computation was possible. In this respect, the circumstances here differ from those in [*United States v.*] *Porth*[, 426 F.2d 519 (10th Cir.1970) ] and similar cases in which defendants failed to complete tax forms or left them blank. Nothing can be calculated from a blank, but a zero, like other figures, has significance.

*United States v. Long*, 618 F.2d at 75–76 (footnote omitted). The context of the decision in Long is completely different. The *Long* court did not address whether the taxpayer had filed a proper return to claim a refund by modifying their return to reflect zeros in lieu of income, but rather whether the taxpayer could be convicted of willful failure to file income tax returns by filing returns in which the taxpayer had inserted zeros. *See id.* at 75. The Ninth Circuit noted that: "A return containing false or misleading figures is still a return. False figures convey false information, but they convey information." *Id.* at 76 (footnote omitted). The Ninth Circuit in *Long* concluded: "We do not condone either the with-

holding of tax information or the supplying of false information on tax returns. Nor do we wish to encourage the type of tax protest behavior which Long displayed in this case." *Id.*

Subsequently, the court in *Hamzik v. United States* criticized the *Long* case:

To be sure, in *United States v. Long*, 618 F.2d 74 (9th Cir.1980), the Ninth Circuit held valid a tax return, which inserted zeros in the spaces for exemptions, income tax, and tax withheld. It concluded that "[a] return containing false or misleading figures is still a return." *Id.* at 76. The rationale in *Long*, however, has been universally rejected by courts outside the Ninth Circuit. As explained by the Seventh Circuit in *Moore*:

"[I]t is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required by the tax code.... In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information."

*Hamzik v. United States*, 64 Fed.Cl. 766, 768 (2005) (quoting *United States v. Moore*, 627 F.2d 830, 835 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981)); *see also United States v. Goetz*, 746 F.2d 705, 707 (11th Cir.1984) ("alleged tax returns which do not contain any financial information are not 'returns'"); *United States v. Mosel*, 738 F.2d 157, 158 (6th Cir. 1984) (citations omitted) ("we align ourselves with those circuits which have specifically considered and rejected the Ninth Circuit's decision in *Long*."); *United States v. Rickman*, 638 F.2d 182, 184 (10th Cir.1980) (defendant's return did not constitute a proper return because the "return did not reflect his [defendant's] income."); *United States v. Smith*, 618 F.2d 280, 281 (5th Cir.), *cert. denied*, 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980) (" 'returns' which contained nothing but zeros and constitutional objections, plainly did not even purport to disclose the required information."); *Kehmeier v. United States*, 95 Fed.Cl. 442, 445 (2010) ("if *Long* holds that a taxpayer's zero

return is valid in these circumstances, it stands alone among the circuits in that regard."). As this court noted in *Hamzik*, "[w]hile this form 'might reasonably be considered a protest,' 'under no circumstances can it be rationally construed as a return.' *United States v. Mosel*, 738 F.2d at 158. It follows, *a fortiori*, that since the Form 1040 filed by plaintiff is not a valid return, it cannot serve as claim for refund." *Hamzik v. United States*, 64 Fed.Cl. at 768; *see also Kehmeier v. United States*, 95 Fed.Cl. at 445 ("Plaintiff is correct in his contention that the zero entry alone does not necessarily disqualify his claim, but he could not reasonably have believed that his return contained information sufficient for it to be considered a valid tax return."). The *Hamzik* court also wrote, "[a] broad constellation of cases has held that a return which lacks essential financial information and, in particular, contains no recitation of taxpayer's income, is not a properly executed return for purposes of the tax laws." *Hamzik v. United States*, 64 Fed.Cl. at 767–68.

In *Hamzik*, the plaintiff filed a Form 1040 return for the 2000 tax year on February 20, 2004, and listed "zeroes for all forms of income and adjusted gross income, claimed various dependency exemptions, and listed $23,420.55 in line 58 for 'federal income tax withheld from Forms W–2 and 1099.' " *Hamzik v. United States*, 64 Fed.Cl. at 766–67. As noted in *Hamzik v. United States*, "Section 7422(a) of the Code provides that a refund suit may not be filed 'until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.' " *Id.* at 766. Treasury Regulation § 301.6402–2 specifically requires: "No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b) (2011); *see also Hamzik v. United States*, 64 Fed.Cl. at 766.

Plaintiffs seek to distinguish *Hamzik v. United States*, arguing that case was brought under a different statute, 26 U.S.C. § 7422, and, according to the plaintiffs, the court in *Hamzik* mistakenly applied Treasury Regulation § 301.6402–2(b) to plaintiff's return and ignored Treasury Regulation § 301.6402–2(c). Treasury Regulation § 301.6402–2(c) states, "[e]xcept for claims filed after June 30, 1976 for the refunding of overpayment of income taxes, all claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax shall be made on Form 843. For special rules applicable to income tax, see § 301.6402–3. For other provisions relating to credits and refunds of taxes other than income tax, see the regulations relating to the particular tax." Treas. Reg. § 301.6402–2(c) (2011).

Treasury Regulation § 301.6402–3(a) states:

(1) In general, in the case of an overpayment of income taxes, a claim for credit or refund of such overpayment shall be made on the appropriate income tax return.

(2) In the case of an overpayment of income taxes for a taxable year of an individual for which a Form 1040 or 1040A has been filed, a claim for refund shall be made on Form 1040X ("Amended U.S. Individual Income Tax Return").

Treas. Reg. § 301.6402–3(a)(1)–(2) (2011). Without any support or citations, plaintiffs claim that "[t]hese 'special rules' provide what is legally sufficient as a claim for refund of income taxes, and the general rules about other kinds of claims do not apply. Where an amended return is filed, questions on the form are answered, nothing more, nothing less." On this basis, plaintiffs believe their case is distinct from the conclusions in *Hamzik* that when a plaintiff files a return "replete with zeroes," a plaintiff has failed to comply with the requirements of filing a properly executed return. *See Hamzik v. United States*, 64 Fed.Cl. at 768. Treasury Regulation § 301.6402–3(a)(5), however, states, in part:

A properly executed individual, fiduciary, or corporation original income tax return or an amended return (on 1040X or 1120X

if applicable) shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return).... A return or amended return shall constitute a claim for refund or credit if it contains a statement setting forth the amount determined as an overpayment and advising whether such amount shall be refunded to the taxpayer or shall be applied as a credit against the taxpayer's estimated income tax for the taxable year immediately succeeding the taxable year for which such return (or amended return) is filed.

Treas. Reg. § 301.6402–3(a)(5); *see also Kehmeier v. United States,* 95 Fed.Cl. 442. The court in *Kehmeier v. United States* found that a return, even an amended return filed pursuant to 26 C.F.R. § 301.6402–3(a), is not a properly executed return if the amended return lacks essential financial information. *See id.* at 444–45 (citing with approval *Hamzik v. United States,* 64 Fed.Cl. 766). Moreover, as noted in *Hamzik v. United States,* "[v]arious courts have held that this specificity requirement [of 26 C.F.R. § 301.6402–2(c)] applies to returns deemed claims for refund under § 301.6402–3(a)(5). *See, e.g., In re Ryan,* 64 F.3d 1516, 1521–22 (11th Cir.1995); *Beckwith Realty, Inc. v. United States,* 896 F.2d 860, 863 (4th Cir.1990)." *Hamzik v. United States,* 64 Fed.Cl. at 767 n. 3. In *Beckwith Realty, Inc. v. United States,* the taxpayer made the identical argument as the plaintiffs in the present case now argue. As the United States Court of Appeals for the Fourth Circuit in *Beckwith* determined:

Taxpayer maintained that § 301.6402–3(a)(5) provides a separate standard for refund claims which preempts application of the specificity requirement in § 301.6402–2(b)(1).... This argument, that a taxpayer is required to do nothing more than file the required form in order to make an effective claim for refund, was rejected in *Fearis v. Commissioner of Internal Revenue,* 548 F.Supp. 408 (N.D.Tex. 1982), and by the district court below. We affirm the district court's conclusion that the taxpayer's full compliance with § 301.6402–3(a)(5) did not relieve it of also

having to comply with the specificity rule set forth in § 301.6402–2(b)(1).

*Beckwith Realty, Inc. v. United States,* 896 F.2d at 863; *see also In re Ryan,* 64 F.3d at 1521 (citing to Treasury Regulations § 301.6402–3(a) and § 301.6402–2(b) and concluding "under the Treasury Regulations, an income tax return is sufficient to constitute a claim for refund, but it must state the 'essential requirements' of the refund demand.").

Moreover, the plaintiff in *Hamzik* did not bring suit under 26 U.S.C. § 7422 as the plaintiffs suggest, but, rather, the court in *Hamzik* sought to determine if the plaintiff had followed the necessary agency exhaustion claim prerequisites for filing a claim for refund in the Court of Federal Claims. The statute at 26 U.S.C. § 7422 provides that:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422(a). The Treasury Regulation at 301.6402–2 state: "No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). By only filing zeros on their amended returns after previously filing returns reporting tax liabilities consistent with the third party information returns, the zero returns filed by the plaintiffs were not claims upon which the necessary grounds to file a claim were identified.

A 2010 Court of Federal Claims case, *Kehmeier v. United States*, 95 Fed.Cl. 442, also is noteworthy. In *Kehmeier*, the plaintiff filed a Form 1040 return and a Form 4852 Substitute for Form W–2 for the 2008 tax year. On the Form 1040 line, "Wages, salaries, tips, etc.," plaintiff entered a zero and claimed as the total federal income tax withheld $42,251.00. *Id.* at 443. The plaintiff in *Kehmeier* then sought a refund of $42.251.00. *Id.* at 444–45. The court in *Kehmeier v. United States*, indicated that among other declarations, "plaintiff submitted a corrected form 1099–B from Monex Credit Company showing $0 in proceeds from the sale of '5 Silver Ingots, 100 oz. ea.' In contrast, defendant states that Monex Credit Company reported to the IRS that plaintiff earned $6,650 in gross proceeds from the sale of these silver ingots." *Id.* at 444 n. 1. The court stated that "[m]ost cases have concluded that tax returns reporting zero wages cannot serve as claims for refund because they fail to include information upon which a tax could be calculated." *Kehmeier v. United States*, 95 Fed.Cl. at 445 (citing *Hamzik v. United States*, 64 Fed.Cl. at 767). The *Kehmeier* court concluded that plaintiff did not comply with the requirements of a properly executed return and that the plaintiff "could not reasonably have believed that his return contained information sufficient for it to be considered a valid tax return." *Kehmeier v. United States*, 95 Fed.Cl. at 445

Similar to the plaintiffs in *Hamzik v. United States* and *Kehmeier v. United States*, the plaintiffs in this case did not submit sufficient information for tax years 2004, 2005, 2006, 2007, and 2008 for any of the plaintiffs' returns to be considered valid tax returns. For each of the tax years, the plaintiffs claim zero in tax liability, allege that no wages were received by plaintiffs, and allege that the amount of dividends received each year was zero. The plaintiffs did not provide the IRS with sufficient information for the tax years at issue, such that the IRS could calculate their tax liability, and therefore, the returns filed by the plaintiffs were neither proper returns or proper claims for refund. As the plaintiffs failed to file properly completed, timely returns for each of the tax years at issue, the court lacks jurisdiction for the plaintiffs' claims for refund tax years 2004, 2005, 2006, 2007, and 2008.

■ Moreover, even if the court was to have jurisdiction over plaintiffs' claims for the tax years 2004, 2005, 2006, 2007, and 2008, the plaintiffs claims would still be dismissed for failure to state a claim. Defendant argues, "[a]ssuming, *arguendo*, that the Court has jurisdiction, plaintiffs' complaint fails to state a claim upon which relief may be granted." Defendant argues "plaintiffs' complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims with respect to their claims for their 2003 through 2008 tax years."

In examining what must be pled in order to state a claim, under both Rule 8(a)(2) of the Rules of the United States Court of Federal Claims and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2); Fed.R.Civ.P. 8(a)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The United States Supreme Court, in the *Twombly* case, stated that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Papasan v. Allain*, 478 U.S. 265, 286 [106 S.Ct. 2932, 92 L.Ed.2d 209] (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in

fact), *see, e.g., Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1 [122 S.Ct. 992, 152 L.Ed.2d 1] (2002) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236 [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

. . .

[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.

*Bell Atl. Corp. v. Twombly,* 550 U.S. at 555–56, 570, 127 S.Ct. 1955 (footnote and other citations omitted; brackets and omissions in original); *see also Ashcroft v. Iqbal,* 129 S.Ct. at 1949–50 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555–57, 570, 127 S.Ct. 1955); *Totes–Isotoner Corp. v. United States,* 594 F.3d 1346, 1354–55 (Fed.Cir.), *cert. denied,* —— U.S. ——, 131 S.Ct. 92, 178 L.Ed.2d 28 (2010); *Bank of Guam v. United States,* 578 F.3d 1318, 1326 (Fed.Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 557, 127 S.Ct. 1955)), reh'g and reh'g en banc denied (Fed.Cir.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 3468, 177 L.Ed.2d 1056 (2010); *Cambridge v. United States,* 558 F.3d 1331, 1335 (Fed.Cir.2009) ("[A] plaintiff must plead factual allegations that support a facially 'plausible' claim to relief in order to avoid dismissal for failure to state a claim." (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)); *Cary v. United States,* 552 F.3d 1373, 1376 (Fed.Cir.) ("The factual allegations must be enough to raise a right to relief above the speculative level. This does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face." (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555, 570, 127 S.Ct. 1955)), *reh'g denied* (Fed.Cir.), *cert. denied,* —— U.S. ——, 129 S.Ct. 2878, 174 L.Ed.2d 580 (2009); *Peninsula Grp. Capital Corp. v. United States,* 93 Fed.Cl. 720, 726–

27 (2010); *Legal Aid Soc'y of New York v. United States,* 92 Fed.Cl. 285, 292, 298, 298 n. 14 (2010); *Maryland Enter., L.L.C. v. United States,* 91 Fed.Cl. 511, 529, *recons. denied,* 93 Fed.Cl. 658 (2010); *Dobyns v. United States,* 91 Fed.Cl. 412, 422–28 (2010). If plaintiffs' complaint have not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal,* 129 S.Ct. at 1950–51 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

■ When deciding on a motion to dismiss based on failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the nonmovant's favor. *See Cambridge v. United States,* 558 F.3d at 1335 (citing *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)); *Cary v. United States,* 552 F.3d at 1376 (citing *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)); *Anaheim Gardens v. United States,* 444 F.3d 1309, 1315 (Fed.Cir.), *reh'g denied* (Fed.Cir. 2006); *Boyle v. United States,* 200 F.3d at 1372; *Perez v. United States,* 156 F.3d 1366, 1370 (Fed.Cir.1998); *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995). If a defendant or the court challenges jurisdiction or a plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *see also Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). "A motion to dismiss under Rule [12(b)(6) ] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy." *Perez v. United States,* 156 F.3d at 1370.

Therefore, although the court assumes that all undisputed facts alleged in the complaint are true and draws all reasonable inferences in the plaintiffs' favor when considering the defendant's motion to dismiss for failure to

state a claim, the facts alleged in the complaint must be plausible and not merely naked assertions devoid of a factual basis. *See Ashcroft v. Iqbal,* 129 S.Ct. at 1949; *see also McZeal v. Sprint Nextel Corp.,* 501 F.3d at 1363 n. 9 (mere allegations of law and conclusions of fact are insufficient to support a claim).

Defendant argues plaintiffs' complaint does not allege any facts sufficient to state a plausible claim, noting that "[f]or four years they filed original returns and reported tax liabilities which were consistent with 3rd-party information returns. Suddenly, in 2008 they filed amended returns for 2003 through 2006, and an original return for 2007, along with 'corrected' forms W–2 and 1099 which reduce their income to zero, except for unemployment compensation. In 2009, they filed an original return for 2008, repeating their zero return position. Plaintiffs' complaint and amended returns merely state conclusions which are squarely contradicted by the original income tax returns and information returns."

In response, the plaintiffs state, "[a]s the returns at issue are all valid claims for refund according to the standards set by statute and federal regulation, and all facts alleged in the Complaint are to be taken as true for purposes of this Motion, and the government seems unwilling to seriously discuss the elements of proof of the frivolous return penalty statute, the only matter left for this Court is to decide how quickly to render summary judgment in Plaintiffs' favor."

Despite plaintiffs' assertions, the allegations set forth in the complaint do not rise to the level of plausible. Each of the amended returns (and the original return for tax year 2008), reduced the plaintiffs income to zero and corrected each of the third party returns filed in the tax year at issue. As noted above, for each tax year, plaintiffs challenged the amount of income third parties stated plaintiffs had earned and for each tax year, plaintiffs disavowed the amount of taxable dividends plaintiffs received. Each of the amended returns, as noted by the defendant, are contradicted by the original income tax returns and the information returns. In or-

der to survive a motion to dismiss, plaintiffs must have "nudged their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. The facts in plaintiffs' complaint are not plausible, and the complaint must be dismissed.

*Plaintiffs' Claim under Arizona's Recording Statute and for Supplemental Jurisdiction*

■ Plaintiffs also seek statutory damages for the defendant's alleged violation of an Arizona recording statute, A.R.S. § 33–420, titled, "False documents; liability; special action; damages; violation; classification." Plaintiffs allege that the IRS' filing of a Notice of Federal Tax Lien in the County Recorder's Office of Maricopa County, Arizona is "groundless, contains material misstatement(s) and/or false claim(s)" and further, the "[d]efendant knew or had reason to know at the time this federal tax lien was recorded that the document is groundless, contains material misstatement(s) and/or false claim(s)." The Arizona recording statute states:

A. A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

B. The owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial

title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. In either case, the owner or beneficial title holder may recover reasonable attorney fees and costs of the action if he prevails.

A.R.S. § 33–420(A–B).

Plaintiffs claim: "[t]he recording of this Notice of Federal Tax Lien was therefore a violation of Arizona's wrongful recording statute found at A.R.S. § 33–420," and the "Arizona statute mandates money damages of $5,000 be paid in the event of its violation and $1,000 be paid in the event Defendant ignores our demand for correction." Plaintiffs also argue "[t]here is nothing in the Tucker Act to suggest that money damages arising from state law are any less [sic] money damages than those arising from federal law, and nothing in the Tucker [A]ct precludes money-mandating state law statutes providing compensation for illegal acts performed by government actors under color of law." The plaintiffs, therefore, conclude, "this Court has jurisdiction to decide Plaintiffs' state law claim which emanates from a money-mandating statute against *anyone* who records a document containing a material misstatement of fact or based on a false claim." (emphasis in original).

The defendant responds: "[t]his Court lacks jurisdiction over alleged violations of state laws because state statutes do not create a right to money damages against the United States." As discussed above, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on Federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948. Moreover, "[n]ot every claim invoking the Constitution, a *federal statute,* or a regulation is cognizable under the Tucker Act." *United States v. Mitchell,* 463 U.S. at 216, 103 S.Ct. 2961 (emphasis added). "Claims founded on state law are also outside the

scope of the limited jurisdiction of the Court of Federal Claims." *Souders v. South Carolina Pub. Serv. Auth.,* 497 F.3d 1303, 1307 (Fed.Cir.2007); *see also Olivier Plantation, LLC v. St. Bernard Parish,* 744 F.Supp.2d 575, 588 (E.D.La.2010). The statute that plaintiffs attempt to rely on is an Arizona state statute and not a federal statute and enforcement of that statute is not within the jurisdiction of this court.

In addition, the United States Court of Appeals for the Ninth Circuit in *Menken v. Emm,* 503 F.3d 1050 (9th Cir.2007), has indicated that the only available forum for violation of A.R.S. § 33–420 might be Arizona. The court in *Menken,* when conducting a personal jurisdiction analysis, considered the existence of an alternative forum other than Arizona, and after quoting A.R.S. § 33–420 B, emphasized that, " '[t]he owner or beneficial title holder of the real property may bring an action pursuant to this section *in the superior court in the county in which the real property is located for such relief,' "* *Menken v. Emm,* 503 F.3d at 1061 (quoting A.R.S. § 33–420 B) (emphasis in original). The court concluded, assuming as true that plaintiff "asserted a claim to quiet title under § 33–420 B, then it appears there is no alternative forum for that portion of his Complaint." *Menken v. Emm,* 503 F.3d at 1061.

Alternatively, the plaintiffs argue that, "[t]his Court also has supplemental jurisdiction to decide this claim." For support that the United States Court of Federal Claims has supplemental jurisdiction, the plaintiffs cite to 28 U.S.C. § 1367 (2006), which states:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a–c); *see also Arbaugh v. Y & H Corp.*, 546 U.S. at 506 n. 5, 126 S.Ct. 1235. The plaintiffs argue that "[a]s none of these elements [in 28 U.S.C. § 1367(c) ] are present in this case, the statute itself offers no good reason for this Court to decline to exercise supplemental jurisdiction." As noted by another Judge of the Court of Federal Claims, "28 U.S.C. § 1367 does not confer any jurisdiction upon the United States Court of Federal Claims because only the United States District Courts are authorized to exercise supplemental jurisdiction." *Hall v. United States*, 69 Fed.Cl. 51, 57 (2005); *see also Trek Leasing, Inc. v. United States*, 62 Fed.Cl. 673, 678 (2004) (indicating 28 U.S.C. § 1367 "only applies specifically to federal district courts."). Therefore, this court cannot exercise supplemental jurisdiction over plaintiffs' claim.

*Oral Argument*

In their cross-motion for summary judgment, the plaintiffs request that oral argument be scheduled. Trial judges are given broad discretion to control and manage their dockets, including with respect to procedural matters. *See, e.g., Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed.Cir.2008) (citing *Nolan v. de Baca*, 603 F.2d 810, 812 (10th Cir.1979), *cert. denied sub nom. Ingram v. Nolan*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980)); *Nutrinova Nutrition Specialties and Food Ingredients GmbH v. Int'l Trade Comm'n*, 224 F.3d 1356, 1360 (Fed.Cir.2000). "[T]he parties' right to be heard may be fulfilled by the court's review of the briefs and supporting affidavits and materials submitted to the court." *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *see also Toquero v. I.N.S.*, 956 F.2d 193, 196 n. 4 (9th Cir.1992) ("It is well-settled that oral argument is not necessary to satisfy due process."); *Lake at Las Vegas Investors Grp. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir.), *reh'g denied* (9th Cir. 1991), *cert. denied*, 503 U.S. 920, 112 S.Ct. 1295, 117 L.Ed.2d 518 (1992) (Affirming the trial court and discussing that court's interpretation of a local District Court rule, finding no prejudicial error based on the denial of oral argument in a summary judgment motion because the party "had the opportunity to apprise the district court of any arguments it believed supported its position...."); *see also, generally*, Beth Bates, Annotation, *Necessity of Oral Argument on Motion for Summary Judgment or Judgment on Pleadings in Federal Court*, 105 A.L.R. Fed. 755 (1991).

Therefore, trial courts have broad discretion regarding whether or not to hold a hearings including oral argument, but are not required to do so. Courts may hold oral argument if the judge believes oral argument would assist the court to resolve the case. The decision of whether or not to hold an oral argument is made by the court in each case, based on the filings and issues raised in that particular case.

The plaintiffs have filed numerous and extensive briefs, including the plaintiffs' cross-

motion for summary judgment and plaintiffs' response to the defendant's motion to dismiss, plaintiffs' reply to their cross-motion for summary judgment, plaintiffs' reply to the defendant's surreply, and most recently, plaintiffs' February 4, 2011 supplement to the plaintiffs' supplement to the plaintiffs' cross-motion for summary judgment and defendant's motion to dismiss, as well as three separate motions to strike. Because of their *pro se* status, the court has been generous in granting opportunities to file including extensions and supplemental filings by plaintiffs. As noted above, the court also took the unusual step of permitting the plaintiffs to file electronically. After carefully reviewing the plaintiffs' complaint, as well as all the briefs regarding the defendant's motion to dismiss, the plaintiffs' cross-motion for summary judgment, and the parties' numerous filings, the court concludes that plaintiffs have had sufficient opportunity to present their allegations and arguments, and concludes that oral argument is not required, and would not be additionally helpful to the court in this case.

*Motions to Strike*

Finally, plaintiffs have filed three separate motions to strike. First, plaintiffs move to strike allegedly defamatory language from defendant's motion to dismiss. Plaintiffs assert that terms such as "tax protester" and "tax defier," used by defendant, are defamatory. Second, plaintiffs move to strike what plaintiffs allege are insufficient defenses from defendant's motion to dismiss. Third, plaintiffs move to strike exhibits from defendant's motion to dismiss. Defendant opposes all three motions to strike.

 As noted by the Court of Federal Claims, "[c]ourts view motions to strike with disfavor and rarely grant them. A motion to strike must be directed to a 'pleading,' which term has been construed narrowly by the courts. Other court documents may not be attacked by a motion to strike." *Fisherman's Harvest, Inc. v. United States,* 74 Fed.Cl. 681, 690 (2006) (citations omitted); *see also Info. Scis. Corp. v. United States,* 86 Fed.Cl. 269, 276 n. 1, *recons. denied,* 88 Fed.Cl. 626 (2009). Although pursuant to the Rules of the United States Court of Federal Claims, the court "may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," RCFC 12(f)(1) (2010), the court in *Fisherman's Harvest, Inc.* noted that, "[i]n particular, a motion to strike may not be used to strike another motion." *Fisherman's Harvest, Inc. v. United States,* 74 Fed.Cl. at 690 (citing *Phinney v. Paulshock,* 181 F.R.D. 185, 207 (D.N.H.1998), *aff'd,* 199 F.3d 1 (1st Cir.1999)). Furthermore, as noted by another Judge of this court, "federal courts generally are reluctant to respond favorably to motions to strike." *Reunion, Inc. v. United States,* 90 Fed.Cl. 576, 580–81 (2009). Similarly, "[i]t has been the practice of the United States Court of Federal Claims to decline to grant a motion to strike, where the moving party is unable to show prejudice or confusion." *Info. Scis. Corp. v. United States,* 86 Fed.Cl. at 276 n. 1 (citing *Impresa Construzioni Geom. Domenico Garufi v. United States,* 61 Fed.Cl. 175, 177 (2004), *appeal dismissed,* 125 Fed.Appx. 310 (Fed.Cir. 2005)).

Turning to each of the plaintiffs' motions to strike, plaintiffs first seek to have stricken from the defendant's motion to dismiss, what plaintiffs describe as "the use of pejorative terms such as 'tax defier' and 'tax protestor,'" which plaintiffs claim are defamatory. The defendant notes that when a plaintiff has claimed no taxable income with contradictory third party information in the record, courts have considered such postures to be frivolous. *See Hoffman v. United States,* 209 F.Supp.2d 1089, 1093 (W.D.Wash.), *recons. denied,* (W.D.Wash.2002) (citing *Bradley v. United States,* 817 F.2d 1400, 1404 (9th Cir. 1987)); *see also Loofbourrow v. Comm'r,* 208 F.Supp.2d 698, 710 (S.D.Tex.2002). Moreover, the defendant notes that courts have considered the positions taken by the plaintiffs as "tax defier rhetoric." *See Custer v. Comm'r,* T.C. Memo. 2008–266, 2008 WL 5061496 (Tax Ct. Dec. 1, 2008) (noting that, "[p]etitioner's insistence on making frivolous tax-protester/tax defier types of arguments indicates an unwillingness to respect the tax laws of the United States." *Id.* at *3); *see also Florance v. Comm'r,* T.C. Memo. 2009–155, 2009 WL 1856223, at *2 (Tax Ct. June 29, 2009). This court is not influenced by

name calling. This court's decision on the merits of plaintiffs' claims is based on the validity of the claims and the arguments presented by both sides. Plaintiffs' motion to strike defamatory language from defendant's motion to dismiss is denied.

Second, plaintiffs seek to strike "insufficient" defenses from defendant's motion to dismiss. Plaintiffs allege that the government "improperly asserts that Plaintiffs returns are frivolous under 26 U.S.C. § 6702," and seeks to have that defense struck from the defendant's motion to dismiss. As with the plaintiffs' motion to strike defamatory language, a number of courts have concluded that tax returns which report zero taxable income, which is contradicted by third party information returns, can be defined as frivolous. *See, e.g., Hoffman v. United States,* 209 F.Supp.2d at 1093 (meeting the requirements of 26 U.S.C. § 6702 (2006) in part because the tax return "contains zeroes or is blank except for plaintiff's name, address, signature, occupation and the alleged overpayment/refund due of $10,400."); *Loofbourrow v. Comm'r,* 208 F.Supp.2d at 710. Once again, this court is not influenced by labels. Plaintiffs' motion to strike "insufficient" defenses from defendant's motion to dismiss is denied.

Finally, plaintiffs seek to strike exhibits 2, 4, 6, and 8, the plaintiffs' tax returns as originally filed by them for the tax years 2003, 2004, 2005, and 2006, from defendant's motion to dismiss, because, according to the plaintiffs, the original tax returns are irrelevant and have been superseded by the amended tax returns for the same tax years, 2003, 2004, 2005, and 2006. Each of the original tax returns, however, demonstrates plaintiffs' first tax position and, together with any amendments or supplemental filings, illustrates the history of plaintiffs' sequential tax filings. As such, each of these exhibits is relevant with respect to the contradictions between the originally filed returns and the amended returns and the credibility of plaintiffs' allegations. Plaintiffs' motion to strike exhibits 2, 4, 6, and 8 from defendant's motion to dismiss is denied.

## CONCLUSION

For the reasons discussed above, plaintiffs' motions to strike are **DENIED.** Also, because this court does not have jurisdiction over plaintiffs' state law claim for wrongful recording, that claim is **DENIED.** Plaintiffs' claims for refund for the 2003–2008 taxable years are dismissed for lack of jurisdiction. The defendant's motion to dismiss plaintiffs' claims for the tax years 2003–2008, for which refunds are claimed by plaintiffs, is **GRANTED.** Plaintiffs' complaint is hereby **DISMISSED.** The Clerk of the Court shall enter **JUDGMENT** consistent with this opinion.

**IT IS SO ORDERED.**